# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00422-CR

**Gallon Wayne Hodges, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 9024040, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Gallon Wayne Hodges guilty of aggravated robbery. After finding Hodges had two prior convictions, the jury assessed sentence at forty-five years in prison. Hodges raises four issues on appeal. He contends that the evidence was legally and factually insufficient to support the conviction because the State failed to prove that appellant used a knife or that the weapon used in the robbery was a deadly weapon. We will affirm the judgment.

### BACKGROUND

Quincy Franklin testified that, on July 20, 2001, he and his cousin, Dedric Dixon, went to a friend's house to have a couple of beers, play dominoes, and talk. He bought some

cigarettes for a friend, but bought the wrong kind. Early on the morning of the Saturday the 21st, he drove to a store to exchange the cigarettes.

As Franklin was returning to his car after exchanging the cigarettes, a man approached and asked if he had change for a $100 bill. Franklin took out $20 bills to hand to the man; Franklin testified that, instead of handing over a $100 bill, the man "handed me a knife right here," indicating his neck. Franklin said he did not immediately feel pain from the stabbing, but noticed he was bleeding. Dixon pursued the man, who swung the knife at him. The man fled to a car and drove away. Dixon threw a bottle that hit the man's car and broke. As the man drove away, Franklin heard a woman in the man's car say, "What did you do?" repeatedly.

After the man drove away, Franklin said he drove straight to the hospital because he had been stabbed in a vital part of his body and thought he did not have time to wait for an ambulance. He said he was told that if the wound had been a little deeper he would have died.

While he was being treated, an officer questioned him. Franklin said he was angry and did not want to speak with the officer. He initially told the officer that he was alone at the time of the attack because he did not want his cousin to be involved; after receiving more treatment, he told police that Dixon was at the scene. He also initially told police that his attacker was a tall 60-year-old man, but told another that the man was about 40 years old. He denied telling police that the attacker said, "Give me all your money."

Franklin said he stayed in the hospital two days and took two weeks off work after the stabbing. About a week after the stabbing, Franklin drove to a store to get gasoline for his car. While the gas was pumping, he saw the man who had stabbed him—appellant—who had a sizeable

2

band-aid on the left side of his forehead.  Two men and a woman were with appellant.  Franklin testified that the woman was appellant's passenger the night of the stabbing.  One of the men went into the store and the other three left.  Franklin went into the store and, pretending to be an old friend of appellant's, asked the remaining man appellant's name, which the man provided.  Franklin denied, contrary to the offense report, that he asked the store clerk appellant's name; his affidavit contained no such assertion.

Not long after Franklin returned home, he received a telephone call from a detective who wanted him to look at a photographic line-up.  Franklin identified appellant as his attacker.

Dixon's version of events was very similar to Franklin's testimony.  Dixon said he had not drunk any alcohol, but admitted having smoked marihuana earlier.  He testified that, during their second trip to the store, he noticed Franklin talking to appellant.  He looked away, then looked back to see Franklin grabbing his neck.  Dixon jumped out of the car and met appellant, who swung at him with an object in his hand; Dixon said he believed the object was a knife.

Austin Police Department patrol officer Foster Herring testified about stopping appellant for a traffic violation on August 5, 2001.  Herring testified that there was a warrant for appellant's arrest.  Herring testified that appellant had a cut on his forehead, but could not say how recent the wound was other than that it was fresh—between two days and two weeks old.  When asked how the cut happened, appellant said someone tried to rob him; he declined to discuss that incident further.  Herring testified that Hodges was 35 years old.

APD detective Jerome Bauzon testified that he received an anonymous tip on July 24, 2001 that appellant was the man who committed the robbery.  Franklin came to Bauzon's office

3

on July 30, 2001 and selected the fifth photo of six as that of his attacker; the photo was of appellant. Bauzon testified that he believed that Franklin's affidavit testimony, rather than his own offense report, accurately reflected how Franklin ascertained appellant's name. Bauzon also testified that a knife is a deadly weapon, but admitted he did not know for certain what weapon was used in this case. He testified that, based on the nature of Franklin's injury, whatever was used was a deadly weapon.

Bauzon testified that he noticed discrepancies between the reports of two police officers in the version of the attack Franklin gave them: one reported that Franklin was giving change to the attacker outside the car, but the other reported that Franklin said the attacker said, "Give me all your money" and stabbed Franklin while he was sitting in the car; also, one reported that Dixon was in the car during the attack and the other said he was outside the car.

Dr. Charlie Ross, the trauma surgeon who treated Franklin, testified that Franklin's blood-alcohol concentration (.079) was very slightly under the level determined to show intoxication (.08). He did not testify about the wound or the procedures he used.

The records of Franklin's treatment were admitted. These records show that Franklin suffered a 1-1/2 centimeter stab wound, that he did not lose consciousness, that he was not in shock or continuing to bleed, and that physicians performed an arteriogram, aortogram, and esophogeal examination. The tests showed no damage.

APD officer Nathaniel Roberts testified that he met Franklin at the hospital. Franklin told him that he was robbed by a 60-year-old black male who asked him for change for a $100 bill. The man stabbed him and ran to a car with a white female in the front passenger seat who yelled,

4

"What did you do?" Roberts testified that Franklin said he picked up something like a brick, threw it at the car, and broke out the front driver's window. Roberts said that, although Franklin said he was alone, someone advised Roberts that Dixon had come to the hospital with Franklin. Dixon told Roberts he did not see Franklin get stabbed, but saw him holding his neck. Dixon told Roberts that, when he got out of the car, the attacker swung a knife at him. Roberts said Franklin admitted that he lied initially about being alone because Dixon had just gotten out of prison and was on parole.

APD officer Gregory White testified that he was working off-duty in the hospital emergency room when Franklin came in. White said Franklin told him he was seated in a car when he was stabbed and robbed. White said Dixon told him he was walking back to his car and saw Franklin get stabbed. White said Dixon said the attacker used a small knife. White said Franklin and Dixon described the attacker as a black man in his forties. White said that he filed a report based on his notes and that he might have mistranscribed the notes regarding which of Franklin and Dixon was sitting in the car or walking back to the car during the attack.

## DISCUSSION

Hodges raises four issues on appeal challenging the legal and factual sufficiency of the evidence to support the findings that a knife was used in the attack and that it was a deadly weapon.

When the court reviews the legal sufficiency of a verdict, it does so in the light most favorable to the verdict to determine whether a rational finder of fact could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury as trier of fact is entitled to

5

resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In determining the factual sufficiency of the elements of the offense, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,' and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The evidence may also be factually insufficient to support a criminal conviction if the evidence in support of the existence of a vital fact, standing alone, is factually too weak to support it. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex. Crim .App. 2001); *Johnson*, 23 S.W.3d at 11. In conducting its factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. *Clewis*, 922 S.W.2d at 133. However, appellate courts should exercise their fact jurisdiction only to prevent a manifestly unjust result. *Id.* at 135. Appellate courts are not free to reweigh the evidence and set aside a jury verdict merely because the reviewing judges feel that a different result is more reasonable. *Id.* A factual sufficiency review must employ appropriate deference to the fact finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7.

Appellant challenges the finding that he used a knife to commit the offense. He correctly observes that no knife was found or introduced into evidence, and that the lead detective could not say for certain that a knife was used in the attack. Appellant notes that Franklin did not see the weapon before he was stabbed, and did not see it when appellant swung at Dixon. Appellant

6

also points out that Dixon did not see the attack on Franklin. When telling about his brief altercation with appellant, Dixon first said appellant swung at him with "something."

Upon further questioning, Dixon said, "I believe it was a knife. . . . That's what it looked like to me. It was a knife." Franklin said that appellant "handed me a knife right here." The jury also saw photographs of the wound in Franklin's neck. There was no evidence that appellant did not use a knife; the only evidence of this sort was concessions by various witnesses that the wound could have been inflicted by something other than a knife.

This is not a case where the indictment alleged one weapon and the State proved another, as in *Weaver v. State*. *See* 551 S.W.2d 419, 421 (Tex. Crim. App. 1977) (evidence that appellant used "Luger" pistol does not prove indictment allegation that appellant used "Ruger" pistol). Nor is it a case where the evidence failed to substantiate, and essentially disproved, the allegation. *See Windham v. State*, 638 S.W.2d 486, 487 (Tex. Crim. App. 1982) (allegation that appellant attempted to kill victim by "shooting at her with a gun" required proof of gun firing projectile rather than mere proof of trigger-pulling producing clicking sound). Rather, this is a case in which the jury was presented with identification of a weapon based on fleeting glimpses corroborated by the nature of the wound and pictures of the wound inflicted; this evidence was undercut by the fleetness of the glimpses and was not substantiated by production of the weapon.

We find this evidence legally and factually sufficient to support the finding that appellant used a knife to attack Franklin. Viewed in the light most favorable to the prosecution, the testimony by the two eyewitnesses at whom appellant wielded the weapon that it was a knife is sufficient. Viewed without that prism, we cannot say that the verdict is against the great weight and

7

preponderance of the evidence because the evidence favoring the verdict is not too weak to support the finding and because no evidence contradicts the finding that a knife was used.

Appellant next contends that the evidence was legally and factually insufficient to show that he used a deadly weapon in committing the offense. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann.§ 1.07(a)(17)(B) (West 2003). The jury saw the photographs of the wound in Franklin's neck. The jury also heard APD detective Bauzon testify that the nature of Franklin's wound persuaded him that the weapon used was a deadly weapon. The jury also heard Franklin testify that he was told at the hospital that he would have died if the wound had been a little deeper. Franklin also testified that he drove directly to the hospital without calling 911 because, based on his training as an emergency medical technician, he believed that a knife wound in the neck endangered his life. The jury read the medical reports concerning the size of the wound and the tests the physicians performed to ascertain the nature of any internal damage to the neck.

Appellant relies on the absence of evidence such as the knife itself, a description of the knife, or medical testimony about the nature of Franklin's injuries. Although a knife is not a deadly weapon *per se*, the State can prove, without expert testimony, that a particular knife is a deadly weapon by showing its size, shape and sharpness, the manner of its use or intended use, and its capacity to produce death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). Evidence that a defendant swung a sharp-looking, hook-type linoleum knife at his victim, without evidence about the size of the knife, the nature of the swinging of the knife, or

8

any wounds on the victim, is not sufficient to support a deadly-weapon finding. *Alvarez v. State*, 566 S.W.2d 612, 614 (Tex. Crim. App. 1978).

In this case, the weapon was not merely brandished, but actually stabbed into Franklin's neck. The jury saw photographs of the width and placement of the wound, heard that Franklin was treated by a trauma surgeon, heard Franklin say that the nature of the wound made him fear for his life, and heard Bauzon testify that the nature of the wound convinced him that the weapon was capable of causing death or serious bodily injury as used by appellant. Viewed in the light most favorable to the prosecution, this evidence is sufficient to show that appellant used a deadly weapon. Viewed without that prism, we cannot say that the verdict is against the great weight and preponderance of the evidence because no evidence contradicts the finding that appellant used a deadly weapon. Nor is the evidence too weak to support the finding.

## CONCLUSION

Having resolved all issues raised on appeal in favor of the judgment, we affirm the judgment.

---

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: October 2, 2003

Do Not Publish